IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ANTHONY WALTON, | : | |
|     Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. AMD 05-296 |
| | : | |
| GUIDANT SALES CORPORATION, | : | |
|     Defendant | : | |

...o0o...

MEMORANDUM OPINION

Plaintiff, Anthony Walton, acting pro se, filed this employment discrimination action against his former employer, Guidant Sales Corporation, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213. Guidant filed a pre-discovery motion for summary judgment asserting that Walton had failed properly to exhaust his administrative remedies, i.e., he failed to file a timely charge of discrimination. I denied the pre-discovery motion without prejudice, concluding that Walton had generated a "genuine dispute of material fact as to the question of exhaustion of administrative process" and that Walton had "amassed significantly probative circumstantial and direct evidence that he did timely satisfy the exhaustion requirement, but that the EEOC process broke down." *Letter Order dated September 27, 2005*.

Discovery having now closed,[1] Guidant has renewed its challenge to these proceedings on the basis of Walton's failure to exhaust administrative remedies (this time via a motion challenging subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1)), as

---

[1] Walton has filed a motion to permit additional discovery. That motion is denied.

well as a challenge to the merits of Walton's claim (via a motion for summary judgment pursuant to Fed.R.Civ.P. 56). Walton has filed lengthy oppositions to Guidant's motions. No hearing is needed. For the reasons stated within, the court concludes that Walton has failed to demonstrate that he timely exhausted his administrative remedies; accordingly, this case shall be dismissed.

The administrative exhaustion requirement under the ADA, as under similar federal anti-discrimination statutes, is well-settled and well-known. The Ninth Circuit recently summarized the doctrine succinctly in *Josephs v. Pacific Bell*, 432 F.3d 1006, 1014 (9th Cir.2005):

> An individual plaintiff must first file a timely EEOC complaint against the allegedly discriminatory party before bringing an ADA suit in federal court. *See EEOC v. Farmer Bros. Co.,* 31 F.3d 891, 899 (9th Cir.1994). Because California is a "deferral" state, the claim must be filed within 300 days of the claimed event of discrimination. 42 U.S.C.A. § 2000e-5(e) (2003). The filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to filing suit, but is a requirement subject to equitable tolling. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982).

*Accord Laber v. Harvey*, --- F.3d ----, 2006 WL 348289, *16 n. 25 (4th Cir., February 16, 2006)(en banc)(federal employee Title VII claim).*See also Davis v. Virginia Commonwealth University*, 180 F.3d 626, 628 n. 3 (4thCir.1999). Moreover, as mentioned above, the doctrine of equitable tolling is available to salvage a judicial action based on an untimely charge:

> Equitable tolling is available when an EEOC representative misleads the plaintiff concerning his claim. *See Rodriguez v. Airborne Express,* 265

>F.3d 890, 901-02 (9th Cir.2001). Such relief may be granted to a plaintiff who: (1) diligently pursued his claim; (2) was misinformed or misled by the administrative agency responsible for processing his charge; (3) relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies; and (4) was acting pro se at the time.
>*Id.* at 902.

*Josephs*, 432 F.3d at 1014. *And see Arbaugh v. Y & H Corp.*, --- S.Ct. ----, 2006 WL 397863, *3 (U.S., February 22, 2006)(holding that employee-numerosity requirement under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), "relates to the substantive adequacy of [plaintiff's] Title VII claim" and not to "federal-court subject-matter jurisdiction.").[2]

---

[2]The court's earlier order denying Guidant's pre-discovery motion for summary judgment speculated as to whether a dispute of material fact as to the issue of administrative exhaustion was to be resolved by judge or jury, but did not offer an opinion on that question. Thus, Guidant has refiled its motion as a Rule 12(b)(1) motion challenging "subject matter jurisdiction," in the hope and expectation that any factual dispute would be determinable by judge rather than submitted to a jury. *See generally Havard v. Perdue Farms, Inc.*, 403 F.Supp.2d 462, 463 & n. 1 (D.Md. 2005)(discussing difference between treatment of factual disputes arising under Rules 12(b)(1) and 56, respectively, as well as difference between private suits and suits against the sovereign). To be sure, many courts (including this one) have more or less routinely entertained defense challenges based on an alleged lack of administrative exhaustion in private employment discrimination cases under Fed.R.Civ.P. 12(b)(1) as a challenge to "subject matter jurisdiction." *E.g., Blanchet v. Chevron/Texaco Corp.*, 368 F.Supp.2d 589, 594-96 (E.D.Tex. 2004).

That practice is thrown even more into question, however, by the Supreme Court's recent decision in *Arbaugh v. Y & H Corp.*, --- S.Ct. ----, 2006 WL 397863 (U.S., February 22, 2006), in which the Court held that the employee-numerosity requirement of Title VII is an ingredient of the plaintiff's claim and not a jurisdictional prerequisite. Similar reasoning underlies the recognition of equitable tolling principles in respect to the exhaustion requirement. *Cf. Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398 (1982)(cited in *Arbaugh,* 2006 WL 397863, at *8). The issue is important because, if administrative exhaustion truly goes to the question of "subject matter jurisdiction," then every federal district judge and every federal appeals court judge arguably would be required to inquire *sua sponte* into whether every employment discrimination plaintiff filed a timely administrative charge of discrimination. *See Arbaugh* , 2006 WL 397863, at *4 ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (quoting *Kontrick v. Ryan,*
(continued...)

Like California, Maryland is also a "deferral state." Guidant terminated Walton's employment on July 23, 2003.[3] Thus, to maintain this action, Walton must show that he filed a legally sufficient charge of disability discrimination with the EEOC within 300 days of the termination of his employment, that is, on or before May 18, 2004, *see McCullough v. Branch Banking & Trust* Co., 35 F.3d 127, 131 (4th Cir.1994), *cert. denied*, 513 U.S. 1151 (1995), or, in the alternative, that equitable tolling principles apply so as to permit a later filing.[4] Importantly, "[e]quitable relief is reserved for only the most deserving complainants." *Polsby v. Chase,* 970 F.2d 1360, 1363 (4th Cir.1992), *vacated on other grounds*, 507 U.S. 1048 (1993).

---

[2](...continued)
540 U.S. 443, 455 (2004)).

In the present case, I deem the issue purely an issue of law, which is to say that, even assuming Walton returned *some document* to the EEOC as he asserts he did within 300 days of the termination of his employment, *see infra* text at 5-8, the standard of *some document*, accepted here by the EEOC, is *legally insufficient* to satisfy Walton's burden to demonstrate that he submitted a legally sufficient charge of discrimination, i.e., a formal charge or a sworn intake questionnaire, which is a statutory pre-condition to his judicial action for relief. *Edelman v. Lynchburg College*, 300 F.3d 400, 401-02 (4thCir.2002). Accordingly, I need not and do not determine, under the circumstances here, whether the Seventh Amendment right to a jury trial extends to the issue of administrative exhaustion under the ADA and similar statutes.

[3]The record is confused as to whether Walton was terminated on July 21, 2003, or July 23, 2003. Under the circumstances, the difference between the two dates is not material to the issue of administrative exhaustion, and I assume the relevant date was July 23, 2003.

[4]The Fourth Circuit has recently reiterated its view of the importance of the administrative exhaustion requirement. *See Chacko v. Patuxent Institution*, 429 F.3d 505, 510 (4thCir.2005). Moreover, "the filing of a sworn charge of discrimination with the EEOC is a mandatory prerequisite to the validity of the charge."*Balazs v. Liebenthal,* 32 F.3d 151, 156-57 (4th Cir.1994); *accord Edelman v. Lynchburg College*, 300 F.3d 400, 401-02 (4thCir.2002)(sworn intake questionnaire may constitute a timely charge of discrimination if appropriately amended within the period of limitations).

It is undisputed in the record that the first formal charge of discrimination produced from the files of the EEOC or from Walton's own files is dated October 7, 2004, long after the May 18, 2004, due date for a timely charge of discrimination. Walton asserts that before he filed the formal charge reproduced in the record, he had submitted a previous "document" sometime before the statutory deadline. Specifically, in the light most favorable to Walton, he makes the following assertions:

> He contacted the Baltimore Office of the EEOC by telephone on numerous occasions starting on or about January 14 or 15, 2004 (as corroborated by his cellular telephone billing statements), and received certain "promised documents" from the EEOC "sometime within the next two weeks." He believed he received the incorrect form (one related to "failure to hire" rather than discriminatory "termination") and he "laid the matter to rest for a few weeks" confident that he had until May 2004 within which to file a formal charge.

> He received a call from the EEOC sometime in late February 2004. He returned that call on March 3, 2004, but he got no response. On the next day, March 4, 2004, he spoke to someone at the EEOC office who "appeared to be" a supervisor, and who advised him that the staff person assigned to his case (i.e., Monica Jackson) was on "medical leave." Walton advised the "supervisor" that he thought he had been sent the "wrong charge form." The supervisor advised Walton that he was "correct" and that a substitute form would be mailed to him. "Within the next few weeks," Walton asserts, he received the substitute form, which he completed and returned by mail to the EEOC.[5]

> Thereafter, approximately "eight weeks" after returning the substitute form, Walton called the EEOC. Specifically, on May 19, 2004, *one day after*

---

[5] Among numerous seeming contradictions in Walton's version of the events of January through March 2004, Guidant points especially to the apparent contradiction in Walton's testimony that he returned the "wrong form" to the EEOC in late January or early February 2004, on the one hand, and his later deposition testimony that he mailed only the "correct form" to the EEOC sometime after March 4, 2004.

*the 300 day deadline*, Walton called the EEOC at least *eight times*. Nevertheless, he asserts, he was "comfortable" because the EEOC advised him that the "intake/charge form" he had returned was "minimally sufficient." He also asserts that he was advised that his charge was "in process" and that he would be contacted by "an investigator" from the EEOC.

> In late June or early July 2004, having not heard back from the EEOC, Walton personally visited the Baltimore EEOC office at least three times and had conversations with EEOC staff, including the staff person who had earlier been on medical leave (Jackson) and who was responsible for Walton's case, and he had several telephone conversations with staff. He asserts he was told, variously, that his "case" was on a supervisor's desk. On August 9, 2004, the supervisor advised Walton that there "were problems" with his "documents," in that they had been "misplaced." Later, at the instructions of the supervisor, Walton completed the charge form that is in the record.

Judy Cassell is a supervisor in the EEOC's Baltimore office. Cassell has provided a declaration for use in this case, under the direction of an attorney for the EEOC. Cassell's declaration, which she attests is based on her "personal knowledge" and her review of the EEOC file, contains the following material information:

> Cassell first spoke to Walton on August 9, 2004, by telephone. Her notes of the conversation reflect that Walton told her [on August 9, 2004] that he had mailed "his questionnaire along with additional documentation" in January 2004. He understood that Jackson was handling his case, that she was on medical leave, and that he assumed someone else was handling the matter in her stead. Cassell advised Walton that the EEOC records did not show that his questionnaire had been received. She further advised him that the EEOC had experienced "problems with entry of info into [the EEOC's] data management system" during the period mentioned by Walton.

> Cassell searched for, but could never locate in the EEOC offices, the "questionnaire" allegedly submitted by Walton in January 2004. Later, Walton submitted, at Cassell's request, a written narrative of his efforts to file a charge. Thereafter, Cassell met with Walton on August 25, 2004, at the EEOC office and requested that he prepare an intake form. He did so. Thereafter, the EEOC processed Walton's charge of discrimination and, in particular, based

6

on Cassell's (1) confirmation that Walton had telephoned the EEOC on January 14, 2004; and (2) wholesale acceptance of Walton's narrative that he returned an EEOC "questionnaire" in January 2004 (which she describes as "consistent with the Baltimore District Office's practice of sending out an intake questionnaire within 1-2 work days of receiving a phone inquiry, and with the average turnaround time for return of a completed questionnaire"), deemed Walton to have filed a "minimally sufficient" charge of discrimination on January 30, 2004.[6]

This "evidence" is plainly insufficient to satisfy Walton's burden on the issue of administrative exhaustion. The court is constrained to agree with Guidant that the absence of any document whatsoever in the files of the EEOC (or in Walton's personal files) demonstrating that Walton filed a minimally sufficient charge of discrimination fatally undercuts the assertions by Walton that he did so. *See* Fed.R.Evid. 801(3)(10)(hearsay exception for absence of a record or entry). As Guidant contends, nothing in Walton's assertions (or in those in the Cassell declaration) even attempts to explain the absence in the records of the EEOC the alleged "document" that Walton claims he mailed to the EEOC offices in January (or in February/March) 2004. It is telling that the EEOC had a record of Walton's January 2004 telephone contact. Thus, some sort of file was minimally opened and some recordation of Walton's interest in pursuing his claims was created. There must be some attempt to explain why, if Walton submitted a document within weeks of that

---

[6]Cassell also concluded that "the detail Mr. Walton provided as to who he contacted at the EEOC and information he received through those contacts was consistent with staffing and customer service issues ongoing at that time at the Baltimore District Office, including Ms. Jackson's medical leave."

telephone contact as Cassell has assumed, it cannot be located.[7] As a matter of law, Walton's showing here is not sufficient to establish that he complied with the statutorily-mandated exhaustion requirement under the ADA.

Nor is this a case appropriate for application of the equitable tolling doctrine. It is obvious that Guidant bears no responsibility whatsoever for Walton's plight. Whether the EEOC bears any responsibility may be a closer question.[8] Nonetheless, there is no showing here that Walton "diligently pursued his claim" or that, even assuming he was somehow "misinformed or misled" by the EEOC, that he "relied in fact on the misinformation or misrepresentations of that agency, causing him to fail to exhaust his administrative remedies." *Josephs*, 432 F.3d at 1014. In other words, Walton did not act diligently in waiting until after the limitations period (May 19, 2004) to telephone the EEOC office *eight times* or in waiting until late June or early July 2004 physically to visit the EEOC office in downtown Baltimore to explore the matter. Consequently, he did not act *in reliance* on any alleged misrepresentation in missing the *May 18, 2004*, filing deadline. To the contrary, Walton attests throughout that he knew his filing deadline was in *mid-May 2004*. Manifestly, he has not been misled.

Accordingly, for the reasons stated above, this case shall be dismissed with prejudice

---

[7]Tellingly, Walton has not sought to produce a declaration of Monica Jackson.

[8]Walton worked several years for Guidant as a handsomely-remunerated salesperson of medical devices and surely knew of the desirability, if not the necessity, to maintain copies of important records and documents.

for failure to satisfy the exhaustion requirement under the ADA. An order follows.


Filed: March 6, 2006                                       __/s/_____
                                                           ANDRE M. DAVIS
                                                           United States District Judge